**JUDGE SWEET**

11 CV 3614

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DIVISION 1181 AMALGAMATED TRANSIT UNION - NEW YORK EMPLOYEES PENSION FUND and its Trustees: MICHAEL CORDIELLO, STANLEY BRETTSCHNEIDER, NEIL STRAHL, DOMENIC GATTO, ANDREW BRETTSCHNEIDER, JEAN-CLAUDE CALIXTE, THOMAS JEMMOTT, and JIMMY HEDGE,<br><br>AND<br><br>DIVISION 1181 AMALGAMATED TRANSIT UNION - NEW YORK WELFARE FUND and its Trustees: MICHAEL CORDIELLO, STANLEY BRETTSCHNEIDER, NEIL STRAHL, DOMENIC GATTO, ANDREW BRETTSCHNEIDER, JEAN-CLAUDE CALIXTE, THOMAS JEMMOTT, and JIMMY HEDGE,<br><br>Plaintiffs,<br><br>v.<br><br>NEW YORK CITY DEPARTMENT OF EDUCATION,<br><br>Defendant. | RECEIVED MAY 26 2011 U.S.D.C. S.D. N.Y. CASHIERS<br><br>CASE NO. 11 CV ____<br><br>COMPLAINT |

Plaintiffs, by counsel, hereby complain of Defendant, as follows:

### Nature of the Suit

1. This is a suit on behalf of the Division 1181 A.T.U. - New York Employees Pension Fund (the "Pension Fund") and the Division 1181 A.T.U. - New York Welfare Fund (the "Welfare Fund") (collectively, the "Funds") against the New York City Department of Education ("DOE") to remedy breaches of the DOE's fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001-1461, pursuant to

- 1 -

ERISA Sections 502(a)(2) and 409, 29 U.S.C. § 1132(a)(2) and 1109, to obtain injunctive relief against further violations of ERISA under ERISA § 502(a)(3)(A), 29 U.S.C. § 1132(a)(3)(A), for breach of contract, and to obtain injunctive relief against further breaches of contract.

## Jurisdiction and Venue

2. Jurisdiction of this Court arises pursuant to 28 U.S.C. §§ 1331, 1337, and 1367 (federal question, commerce, and supplemental jurisdiction), Section 502(e)(1) and (f) of ERISA, 29 U.S.C. § 1132(e)(1) and (f).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391 and Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), in that the Defendant maintains its primary place of business in this district.

## Parties

4. The Funds are multiemployer employee benefit plans within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §§ 1002(3) and 1002(37), and are joint labor-management funds pursuant to Section 302(c) of the LMRA, 29 U.S.C. § 186(c).

5. Plaintiffs Michael Cordiello, Stanley Brettschneider, Neil Strahl, Domenic Gatto, Andrew Brettschneider, Jean-Claude Calixte, Thomas Jemmott, and Jimmy Hedge are the Trustees of each Fund. The Trustees are fiduciaries of each Fund within the meaning of Section 3(21) of ERISA, 29 U.S.C. §1002(21). The Funds are administered at 101-49 Woodhaven Boulevard, Ozone Park, New York 11416. The Trustees bring this action on behalf of the Funds and their participants and beneficiaries pursuant to Section 502 of ERISA, 29 U.S.C. § 1132.

6. Defendant DOE is an agency of the City of New York with its principal place of business located at 52 Chambers Street, New York, New York.

## General Allegations

7. The Pension Fund is a multiemployer defined benefit plan that provides retirement benefits to eligible participants.

8. The Welfare Fund is a multiemployer benefit plan that provides medical, hospitalization, and related benefits to participants and their beneficiaries.

9. The Funds' participants are employees of employers ("Signatory Employers") who are parties to a collective bargaining agreement ("CBA") with the Amalgamated Transit Union Local 1181-1061, AFL-CIO (the "Union"), a labor organization representing employees in an industry affecting interstate commerce.

10. These participants, for the most part, drive school buses and/or are attendants/escorts on school buses in the city of New York.

11. At all relevant times, the CBA between the Signatory Employers and the Union obligated the Signatory Employers to make payments to the Funds in specified amounts ("contributions") on behalf of their employees covered by the CBA.

12. The Trust Agreements and Declarations of Trust (the "Trust Agreements") for each Fund provide that all contributions that are due to the Funds become assets of the Funds as of the date on which they become due.

13. Pursuant to their authority under the CBA and the Funds' Trust Agreements, the Trustees of the Funds adopted a Joint Policy for Collection of Delinquent Contributions (the "Policy"). The CBA specifically incorporates the Policy into the CBA, and, accordingly, the Policy is a part of the CBA.

14. At all relevant times, certain of the Signatory Employers were contractors with the DOE (the "DOE Contracting Employers").

15. With respect to Contributions owed to the Funds by DOE Contracting Employers, the contracts between the DOE and the DOE Contracting Employers establish a procedure whereby if an employer participating in the Funds does not pay contributions when due, the Union may provide notice to the DOE that a DOE Contracting Employer owes contributions to the Funds and the DOE then withholds those amounts from its payment to that DOE Contracting Employer for services performed by the employer, and releases those amounts directly to the Union for the benefit of the Funds (the "Attachment Procedure").

16. The CBA, the Funds' Trust Agreements, and the Policy also provide for the Attachment Procedure.

17. Under the Attachment Procedure, the Funds' Board of Trustees makes a determination that amounts are owed by a DOE Contracting Employer, and then the Union, on behalf of the Funds, directs the DOE to withhold those amounts from the employer and release the amounts directly to the Union for the benefit of the Funds.

18. Under the terms of the CBA, the Funds' Trust Agreements, the Policy, and the contracts between the DOE and the DOE Contracting Employers, it is intended that the DOE has no discretion over the process; rather, DOE's sole intended authority under the applicable agreements is to transfer the attached amounts directly to the Union for the Funds' benefit.

19. Thus, the amounts so attached immediately become "assets" of the Funds as that term is used in ERISA Section 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).

20. Specifically, Section 45(5) of the DOE Contracting Employers' contracts with the DOE states the following:

if the contractor is found to be in violation of the foregoing employee protection provisions regarding the payment of wages, welfare benefit contributions, pension contributions, or other aspects of compensation or benefits, then the Director of the Office of Pupil Transportation, within thirty (30) days of written notice, ***shall withhold the appropriate amounts*** from any payments due to the contractor ***and pay them directly*** to the applicable union for the benefit of the employees affected, to the Division 1181 A.T.U. – New York Employees Pension Fund or other applicable union pension fund for the benefit of the employees affected or to the appropriate Welfare Fund for the benefit of the employees affected.

(emphasis supplied).

21. The Funds (and their participants) are the direct intended beneficiaries of this contractual provision in these valid and binding contracts between the DOE and the DOE Contacting Employers. This provision specifically confers a direct and immediate benefit upon the Funds.

22. Furthermore, in Sections XI(e)(3) and XIV(f)(3) of the CBA, the DOE Contracting Employers have agreed that "[t]he Board of Trustees' determination that contributions are owed constitutes the required finding for purposes of N.Y.C. Department of Education attachments."

23. The intent and purpose of CBA Sections XI(e)(3) and XIV(f)(3) is to provide the Funds with the right to receive immediate payment when the Board of Trustees determines that delinquent contributions are owed without having to resort to the expenses and delay of legal proceedings to collect the delinquent amounts.

24. The Attachment Procedure has been in place for over twenty-seven years and has greatly benefited the Funds' ability to continue to provide benefits to participants and beneficiaries in that delinquent contributions are collected immediately, and the Funds have not had significant expenditures on legal fees and costs for purposes of collections as there has usually been no need to institute legal proceedings to collect delinquent contributions.

### DOE's Exercise of Discretionary Authority and Control Over the Disposition of Assets of the Funds

25. In accordance with the CBA, the Funds' Trust Agreements, and the Policy, the Funds' auditors conducted reviews of the books and records of a) DOE Contracting Employer, Minibus Service Company, Inc. ("Minibus") for the period September 1, 2002 through June 30, 2004 (the "Minibus '02-'04 Payroll Audit"), and September 1, 2004 through December 31, 2007 (the "Minibus '04-'07 Payroll Audit"), and b) DOE Contracting Employer J.D. Transit, Inc. ("J.D.") for the period September 1, 2004 through December 31, 2007 (the "J.D. '04-'07 Payroll Audit") to determine whether the appropriate contributions had been made by those employers for those periods (collectively, the "Payroll Audits").

26. With respect to the Minibus '02-'04 Payroll Audit, after the review process was complete, in accordance with the CBA and Policy, the Funds' Board of Trustees made a determination that contributions, interest, and audit fees were owed by Minibus in the total amount of $190,400.33.

27. Despite notice by the Funds to Minibus of the amount determined to be owed as a result of the Minibus '02-'04 Payroll Audit, and that if not paid the amount would be attached at the DOE through the Attachment Procedure, Minibus failed to pay the $190,400.33 determined to be owed.

28. Accordingly, on June 2, 2008, pursuant to the Attachment Procedure, and the contract between DOE and Minibus, the Union, on the Funds' behalf, directed the DOE to withhold the amount determined to be owed by Minibus for the Minibus '02-'04 Payroll Audit

($190,400.33) from Minibus' service check, and to remit that amount directly to the Union for the benefit of the Funds.

29. However, at some point after June 2, 2008, the DOE exercised discretion and decided not to release the attached amount of $190,400.33 to the Union for the benefit of the Funds.

30. Instead, the DOE released the amount to Minibus.

31. With respect to the Minibus '04-'07 Payroll Audit, after the review process was complete, in accordance with the CBA and Policy, the Funds' Board of Trustees made a determination that contributions, interest, and audit fees were owed by Minibus in the total amount of $146,006.22.

32. Despite notice by the Funds to Minibus of the amount determined to be owed as a result of the Minibus '04-'07 Payroll Audit, and that if not paid the amount would be attached at the DOE through the Attachment Procedure, Minibus failed to pay the $146,006.22 determined to be owed.

33. Accordingly, on July 1, 2008, pursuant to the Attachment Procedure, and the contract between the DOE and Minibus to which the Funds are a third party beneficiary, the Union, on the Funds' behalf, directed the DOE to withhold the amount determined to be owed by Minibus for the Minibus '04-'07 Payroll Audit ($146,006.22) from Minibus' service check and to remit that amount directly to the Union for the benefit of the Funds.

34. However, at some point after July 1, 2008, the DOE exercised discretion and decided not to release the attached amount of $146,006.22 to the Union for the benefit of the Funds.

35. Instead, the DOE released the amount to Minibus.

36. Minibus ceased operations shortly after DOE released the monies under attachment to it and the Funds were never able to recover these monies from Minibus, totaling $336,406.55.

37. With respect to the J.D. '04-'07 Payroll Audit, after the review process was complete, in accordance with the CBA and Policy, the Funds' Board of Trustees made a determination that contributions, interest, and audits fees were owed by J.D. in the total amount of $8,503.71.

38. Despite notice by the Funds to J.D. of the amount determined to be owed as a result of the J.D. '04-'07 Payroll Audit, and that if not paid the amount would be attached at the DOE through the Attachment Procedure, J.D. failed to pay the $8,503.71 determined to be owed.

39. Accordingly, on July 1, 2008, pursuant to the Attachment Procedure, and the contract between DOE and J.D., the Union, on the Funds' behalf, directed the DOE to withhold the amount determined to be owed by J.D. for the J.D. '04-'07 Payroll Audit ($8,503.71) from J.D.'s service check and to remit that amount directly to the Union for the benefit of the Funds.

40. However, at some point after July 1, 2008, the DOE exercised discretion and decided not to release the attached amount of $8,503.71 to the Union for the benefit of the Funds.

41. Instead, the DOE released the amount to J.D.

42. J.D. filed for bankruptcy on October 10, 2008, and although the Funds were able to recover some of the amounts due from J.D., the Funds were not able to recover the balance of $4,555.41.

43. Once the DOE had possession of the Funds' assets, (i.e. money the DOE withheld from the DOE contracting employee pursuant to the Attachment procedure) the DOE became a fiduciary with respect to these assets.

44. By exercising discretion and deciding not to release these monies under attachment to the Union for the benefit of the Funds, DOE became a fiduciary with respect to the Funds as defined by ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A), in that it exercised discretionary authority and control over the disposition of assets of the Funds.

### Count I
### Breach of Fiduciary Duties under ERISA

45. The Funds repeat the allegations set forth in paragraphs 1 through 44 above and incorporate them herein by reference.

46. By its discretionary action and omission of refusing to and failing to release the Payroll Audit amounts under attachment to the Funds, and by its discretionary action of instead releasing those monies to Minibus and J.D., the DOE failed to act "solely in the interest of the participants," which constitutes a breach of its fiduciary duties under ERISA Section 404(a)(1), 29 U.S.C. § 1104(a)(1).

47. By its discretionary action and omission of refusing to and failing to release the Payroll Audit amounts under attachment to the Funds, and by its discretionary action of instead releasing those monies to Minibus and J.D., the DOE failed to act with the purpose of providing benefits to participants and beneficiaries, in violation of its fiduciary duties set forth in ERISA Section 404(a)(1)(A)(i), 29 U.S.C. § 1104(a)(1)(A)(i).

48. By its discretionary action and omission of refusing to and failing to release the Payroll Audit amounts under attachment to the Funds, and by its discretionary action of instead releasing those monies to Minibus and J.D., the DOE allowed plan assets to inure to the benefit of the employer in violation of Section ERISA Section 403(c)(1), 29 U.S.C. § 1103(c)(1), and in violation of its fiduciary duties under 29 U.S.C. §§ 1104(a)(1), 1104(a)(1)(A) and (D).

49. By its discretionary action and omission of refusing to and failing to release the Payroll Audit amounts under attachment to the Funds, and by its discretionary action of instead releasing those monies to Minibus and J.D., the DOE failed to act with the requisite care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity would use, in violation of its fiduciary duties under ERISA Section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

50. DOE, Minibus, and J.D. are each a "party in interest" as defined by ERISA Sections 3(14)(A), (C) and (H), 29 U.S.C. § 1002(14)(A), (C) and (H).

51. By its discretionary action and omission of refusing to and failing to release the Payroll Audit amounts under attachment to the Funds, and by its discretionary action of instead releasing those monies to Minibus and J.D., the DOE engaged in prohibited transactions by using plan assets in a transaction with a "party in interest," and transferring plan assets for use by and for the benefit of a "party in interest," conduct prohibited by ERISA Section 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), thus violating its fiduciary duties under ERISA Section 404, 29 U.S.C. §§ 1104(a)(1), 1104(a)(1)(A), (B), and (D).

52. By its discretionary action and omission of refusing to and failing to release the Payroll Audit amounts under attachment to the Funds, and by its discretionary action of instead releasing those monies to Minibus and J.D., the DOE engaged in a prohibited transaction by dealing with plan assets in its own interest or for its own account, in violation of ERISA Section 406(b)(1), 29 U.S.C. § 1106(b)(1), thus violating its fiduciary duties under Section 404 of ERISA, 29 U.S.C. § 1104(a)(1), 1104(a)(1)(A), (B), and (D).

53. By its discretionary action and omission of refusing to and failing to release the Payroll Audit amounts under attachment to the Funds, and by its discretionary action of instead

releasing those monies to Minibus and J.D., the DOE engaged in a prohibited transaction by acting in a transaction involving the plan on behalf of a party whose interests are adverse to the interests of the plan and its participants and beneficiaries, thus violating its fiduciary duties under ERISA Section 406(b)(2), 29 U.S.C. § 1106(b)(2).

54. As a result of these fiduciary breaches by DOE, the Funds have suffered losses in the amount of the monies improperly released to the employers by DOE and not recovered by the Funds in the amount of $190,400.33 for the Minibus '02-'04 Payroll Audit, $146,006.22 for the Minibus '04-'07 Payroll Audit, and $4,555.41 for the J.D. '04-'07 Payroll Audit, totaling $340,961.96, plus the Funds' attorneys fees and costs in attempting to collect these amounts from the employers and the Funds' attorneys fees and costs in this action.

55. Accordingly, pursuant to ERISA Section 409(a), 29 U.S.C. § 1109(a), the DOE is liable to the Funds in the amount of $340,961.96, plus the Funds' attorneys fees and costs in attempting to collect these amounts from the employers, including the Funds' attorneys fees and costs in this action.

## Count II
## For an Injunction under ERISA § 502(a)(3)(A)

56. The Funds repeat the allegations set forth in paragraphs 1 through 55 above and incorporate them herein by reference.

57. ERISA § 502(a)(3)(A), 29 U.S.C. § 1132(a)(3)(A), permits a plan fiduciary to bring an action "to enjoin any act or practice which violates any provision of this title or the terms of the plan."

58. DOE's refusal to release the subject monies to the Funds under the Attachment Procedure and its release of those monies to the employers instead is a violation of Title I of ERISA and the terms of CBA and the Funds' plan documents. As result the Funds are entitled to

an injunction enjoining the DOE from failing to abide by the Attachment Procedure and compelling the DOE to abide by the Attachment Procedure in the future.

### Count III
### Third-Party Beneficiary Claim for Breach of Contract

59. The Funds repeat the allegations set forth in paragraphs 1 through 58 above and incorporate them herein by reference.

60. The contracts between the DOE and Minibus and the DOE and J.D. were valid and binding contracts.

61. Section 45(5) of those contracts was intended for the direct and immediate benefit of the Funds, and the Funds are a third-party beneficiary of those contracts.

62. By its discretionary action and omission of refusing to and failing to release the Payroll Audit amounts under attachment to the Funds, and by its discretionary action of instead releasing those monies to Minibus and J.D, DOE breached its obligation to the Funds under the contract and is therefore liable to the Funds for breach of contract.

63. Accordingly, DOE is liable to the Funds for the losses suffered by the Funds as a result of the DOE's breach of contract in the amount of $340,961.96, plus the Funds' attorneys fees and costs in attempting to collect these amounts from the employers, including the Funds' attorneys fees and costs in this action.

### Count IV
### For Injunctive Relief

64. The Funds repeat the allegations set forth in paragraphs 1 through 64 above and incorporate them herein by reference.

65. The Funds are entitled to equitable relief in the form of an injunction enjoining DOE from future breaches of the agreed-to Attachment Procedure as set forth in of Section 45(5)

of DOE's contracts with the DOE Contracting Employers because the Funds do not have an adequate remedy at law in that, as with employers such as Minibus and J.D. that have gone out of business, mere money judgments against delinquent employers can be meaningless.

66.  Accordingly, the Funds request equitable relief in the form of an injunction enjoining DOE from failing to abide by the Attachment Procedure in the future.

**WHEREFORE**, the Funds pray that the Court:

A.  Render judgment against the DOE and in favor of the Funds in the amount of $340,961.96, plus the Funds' attorneys' fees and costs in attempting to collect these amounts from the employers, and the Funds' attorneys fees and costs in this action, in order to compensate the Funds for the losses incurred as a result of the DOE's breaches of its fiduciary duties to the Funds;

B.  Enter an order enjoining the DOE from failing to abide by the Attachment Procedure and compelling the DOE to abide by the Attachment Procedure in the future;

C.  To the extent not covered by the damages awarded for the DOE'S breach of its fiduciary duties, award to the Funds their reasonable costs, expenses, and attorneys' fees incurred in prosecuting this action pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1);

D.  Render judgment against the DOE and in favor of the Funds as a third party beneficiary for breach of contract in the amount of $340,961.96, plus the Funds' attorneys' fees and costs in attempting to collect these amounts from the employers, and the Funds' attorneys fees and costs in this action, in order to compensate the Funds for the losses incurred as a result of the DOE's breaches of its fiduciary duties to the Funds;

E.  Enter an Order enjoining the DOE from future breaches of the agreed-to Attachment Procedure as set forth in of Section 45(5) of its contracts with the DOE Contracting Employers; and

F.  Award to the Funds such other and further relief as the Court may determine are just and proper.

Dated: May 26, 2011

Respectfully submitted,

Jeffrey D. Pollack
Mark Pomerantz
Mintz & Gold LLP
470 Park Avenue South
New York, NY 10016
Tel.   (212) 696-4848
Fax   (212) 696-1231
pollack@mintzandgold.com
pomerantz@mintzandgold.com

Barry S. Slevin
Jeffrey S. Swyers
Slevin & Hart, P.C.
1625 Massachusetts Avenue, NW, Suite 450
Washington, D.C. 20036
Tel.   (202) 797-8700
Fax   (202) 234-8231
bslevin@slevinhart.com
jswyers@slevinhart.com

Counsel for Plaintiffs

A copy of this Complaint will be served upon the Secretary of Labor and the Secretary of the Treasury by certified mail, as required by Section 502(h) of ERISA, 29 U.S.C. § 1132(h).